[No. B033017. Second Dist., Div. Seven. Oct. 2, 1989.]

JULIE FISHER et al., Plaintiffs and Appellants, v.
SAN PEDRO PENINSULA HOSPITAL et al., Defendants and
Respondents.

596

598

---

**COUNSEL**

Patricia J. Barry for Plaintiffs and Appellants.

Christiann L. Klein and Chris Redburn as Amici Curiae on behalf of Plaintiffs and Appellants.

Rushfeldt, Shelley & Drake, Horvitz & Levy, David M. Axelrad, Julie Beyer Houpt, Baker, Silberberg & Keener, John C. Kelly, Robie & Matthai,

Pamela E. Dunn, James R. Robie, O'Flaherty & Belgum and John J. Weber for Defendants and Respondents.

## OPINION

WOODS (Fred), J.— ■ ■■ ■■ ■ Plaintiffs appeal from an order dismissing their complaint after defendants' demurrers were sustained without leave to amend.[1] The crucial issue presented by this appeal is whether under the facts alleged in the second amended complaint, Ms. Fisher pled a valid claim for environmental sexual harassment. Although we conclude that she has not, we reverse and remand with directions to give plaintiffs leave to amend certain causes of action since this case is one of first impression.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 1987, plaintiffs, Julie and Cordell Fisher, commenced this action against San Pedro Peninsula Hospital (hereafter SPPH), Drs. Barry H. Tischler and Frank Brow, and approximately two dozen hospital officers, directors and board members. At the time of the filing of the second amended complaint, the operative pleading in this matter, only SPPH and Drs. Tischler and Brow remained as defendants.

The second amended complaint alleges six causes of action: sexual discrimination under the California Fair Employment and Housing Act (hereafter FEHA) (by Ms. Fisher against SPPH and Dr. Tischler) and retaliation in employment under FEHA (by Ms. Fisher against SPPH); retaliation in employment under FEHA (by Dr. Fisher against SPPH and Dr. Brow); third party interference with business relations (by Ms. Fisher against Dr. Tischler and by Dr. Fisher against Dr. Brow); and intentional infliction of emotional distress (by both plaintiffs against all defendants).

---

[1] Plaintiffs purport to appeal from an order of dismissal of the second amended complaint as to all defendants. However, the order appealed from only names SPPH. An order sustaining a demurrer without leave to amend is not an appealable order (*Beazell v. Schrader* (1963) 59 Cal.2d 577, 579 [30 Cal.Rptr. 534, 381 P.2d 390]), but we may amend a judgment to include a dismissal of the action as to a defendant whose demurrer has been sustained without leave to amend. (See *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 920-921 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].)

Although in *Cohen v. Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 671 [242 Cal.Rptr. 84], we indicated that we would not hear appeals from nonappealable orders, in the interest of justice and to prevent further delay, we will make an exception in this case since the issues as to the two defendant doctors are interrelated to and intertwined with the issues as to SPPH. Accordingly, we amend the order of dismissal to include Drs. Tischler and Brow.

As alleged in the second amended complaint, the facts in this case are as follows.

Ms. Fisher was employed as a surgical nurse by SPPH. Ms. Fisher was hired by SPPH on August 3, 1981. Dr. Fisher, who is the husband of Ms. Fisher, has staff privileges as a pediatric dental surgeon at SPPH.

Dr. Tischler is a member of SPPH's medical staff specializing in gynecology and obstetrics. Dr. Tischler controlled Ms. Fisher's employment by giving her direct orders and making recommendations about her performance.

Dr. Brow is a member of SPPH's medical staff specializing in pediatrics.

From 1981 until November 1982, Dr. Tischler engaged in repeated acts of sexual harassment against Ms. Fisher, including verbal sexual insults and offensive touchings; on one occasion, he separated the cartilage in her ribs because he hugged her so tightly.

Ms. Fisher complained to SPPH about the sexual harassment. SPPH conducted an investigation. Afterwards, in December 1982, Dr. Tischler sent a letter of apology to Ms. Fisher. No disciplinary action was taken against Dr. Tischler. As a result of complaining, Ms. Fisher was ostracized by her associates and coworkers until approximately July 1983.

Dr. Tischler continued to engage in sexual harassment against other women employees in the presence of Ms. Fisher. These acts included: "[P]ulling nurses onto his lap, hugging and kissing them while wiggling, making offensive statements of a sexual nature, moving his hands in the direction of [a] woman's vaginal area, grabbing women from the back with his hands on their breasts or in the area of their breasts, picking up women and swinging them around, throwing a woman on a gurney, walking up closely behind a woman with movements of his pelvic area. Plaintiff JULIE FISHER saw him commit acts of sexual harassment against [three named] nurses. The acts were committed in hallways, the operating room, and the lunch room of Defendant HOSPITAL from 1982 to 1986. None of the women welcomed the advances and indicated to Defendant TISCHLER they were offensive by moving away from him, avoiding him whenever possible, or telling him to stop. Julie also was forced to hear Defendant TISCHLER make lewd remarks about the breasts of anesthetized female patients."

In June 1986, Ms. Fisher applied for workers' compensation, alleging that she suffered "headaches, stomach upset, diarrhea, tachycardia and

panic attacks" because Dr. Tischler's treatment of other women was so disconcerting.

In response to Ms. Fisher's workers' compensation claim, SPPH investigated Dr. Tischler a second time. "Defendant HOSPITAL officials were informed by two other employees besides [plaintiffs] that Defendant TISCHLER did engage in acts of sexual harassment, they did not like it, and wanted it to stop. Nonetheless, Defendant HOSPITAL took no disciplinary action against Defendant TISCHLER and furthermore covered up his action by falsely reporting to the California Department of Public Health Services through its attorney that its investigation showed he had not engaged in sexual harassment."

As a result of the second investigation, Ms. Fisher's supervisors, associates and coworkers left the room when she entered, refused to speak to her, and told her that she was causing trouble for fellow employees. The Fishers complained to SPPH about this ostracism, but no action was taken.

After SPPH refused to take corrective action when placed on notice of Ms. Fisher's ostracism, Ms. Fisher terminated her employment at SPPH on October 31, 1986, because of intolerable working conditions.

Ms. Fisher alleges that she and SPPH had an "economic relationship whereby she would be paid wages in exchange for which she would perform services as a surgical nurse . . . as a part of the relationship [she] had a duty to act as the patient's advocate to insure the patient would receive competent medical care." Ms. Fisher further alleges that Dr. Tischler "embarked on a course of intentional conduct . . . designed to disrupt the relationship between Plaintiff and [SPPH] and to interfere with Plaintiff's duty to protect patient care."

In 1982, Dr. Brow, who receives many referrals from Dr. Tischler, stated openly that he "would no longer provide any medical services to patients even if they were his own when Dr. Fisher requested the services" because Dr. Fisher had harassed Dr. Tischler by reporting Tischler to SPPH. This practice continued to late 1986.

"Defendant BROW actually disrupted the relationship by forcing Dr. Fisher to seek out other physicians for examinations and histories and for medical care on numerous occasions from 1983 to October 1986, thereby threatening the welfare of Dr. Fisher's patients. On one occasion in March 1986, when Dr. BROW was the pediatrician on call, he threatened the life of a young patient of Dr. Fisher by refusing to examine the child."

When Dr. Fisher complained to SPPH about Dr. Brow's actions, it refused to take any corrective action. SPPH refused to renew Dr. Fisher's lease for the office he had rented for many years after he filed a complaint with the Department of Fair Employment and Housing. The office remained vacant at the time the second amended complaint was filed.

Dr. Fisher alleges that he has an economic relationship with SPPH "whereby he was granted staff privileges to perform dental surgery and [SPPH] would receive income from Dr. Fisher's patients. Part of Dr. Fisher's responsibilities was to insure his patients received competent medical care." Dr. Brow's intentional acts were designed "to disrupt the relationship [Dr. Fisher] had with [SPPH] and with his patients."

On July 14, 1987, in response to SPPH's motion for a protective order to prevent plaintiffs' attorney from communicating with SPPH's employees, the court ordered that: "the parties agree on a referee who will have full power to pass on whether the plaintiff will be able to contact a specific employee."

On September 10, 1987, the court stayed plaintiffs' taking depositions until after it had ruled on the defendants' demurrers.

At the September 17, 1987, hearing on the first amended complaint, the trial court notified Ms. Fisher that she had failed to allege that Dr. Tischler's misconduct toward other women was either "systematic" or "pervasive." Plaintiffs' counsel indicated that there were no additional facts which could be pled in support of the cause of action for sexual harassment. Plaintiffs' counsel indicated that she would like to test her complaint on appeal and stated that her "inclination right now is to elect to stand by my complaint, at least on Julie's cause of action [for environmental sexual harassment]." In response, the court stated that: "[I] want to see a lot of new stuff," and "I want the concerns that I have spent about an hour addressing . . . examined and I want them responded to."

The material facts alleged in the second amended complaint are not significantly different from the facts alleged in the first amended complaint. On December 29, 1987, the court sustained without leave to amend the demurrers of all three defendants to the second amended complaint. The court found that Ms. Fisher's claims were preempted by the Workers' Compensation Act and barred by the statute of limitations. The court noted that: "[Ms. Fisher] alleges essentially a vicarious disgust of Tischler but vicarious disgust is not actionable in the context of sexual harassment— there must be an 'harassor' [sic] and an [sic] 'harassee' . . . her vicarious

reaction to the travail of others is not sexual harassment directed to her for which she may have a cause of action."

The court ruled the same on Dr. Tischler's demurrer, noting that the world is full of "offensive jackasses but there is no tort for being offensive." The court found that Dr. Brow was not under a duty to make referrals to, or accept patient referrals from, Dr. Fisher.

Amicus curiae briefs were filed by the Fair Employment and Housing Commission (addressing the issues of whether or not a woman had to be the direct target of work environment harassment to bring a claim and whether the FEHA causes of action are preempted by the Workers' Compensation Act—Lab. Code, § 3200 et seq.) and by the Employment Law Center (addressing the issue of workers' compensation preemption).

## CONTENTIONS

1. Whether Ms. Fisher has a claim for environmental sexual harassment under the California Fair Employment Housing Act (Gov. Code, § 12900 et seq.)[2] against SPPH and Dr. Tischler. (First cause of action.)

2. Whether Ms. Fisher has a claim for retaliation under the FEHA against SPPH. (First cause of action.)

3. Whether Ms. Fisher has a claim for interference with business relations against Dr. Tischler. (Second cause of action.)

4. Whether Ms. Fisher has a claim for emotional distress against SPPH and Dr. Tischler.[3] (Fifth cause of action.)

5. Whether Dr. Fisher has a claim for retaliation under the FEHA against SPPH and Dr. Brow. (Third cause of action.)

6. Whether Dr. Fisher has a claim for interference with business relations against Dr. Brow. (Fourth cause of action.)

7. Whether Dr. Fisher has a claim for emotional distress against SPPH and Dr. Brow. (See fn. 3, *ante.*) (Sixth cause of action.)

---

[2] Unless otherwise noted, all statutory references are to the Government Code.

[3] On appeal, Ms. Fisher abandoned her claim for emotional distress against Dr. Brow and Dr. Fisher abandoned his claim for emotional distress against Dr. Tischler.

DISCUSSION

I. Standard of Review

 It is well settled that a general demurrer admits the truth of all material factual allegations in the complaint and that the question of plaintiffs' ability to prove these allegations, or the possible difficulty in making such proof, does not concern the reviewing court. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) The plaintiffs need only plead facts showing that they may be entitled to some relief. (*Ibid.*)

The complaint should be liberally, but reasonably construed. (*Dale* v. *City of Mountain View* (1976) 55 Cal.App.3d 101, 105 [127 Cal.Rptr. 520].) While a demurrer admits all material and issuable facts, it does not admit contentions, deductions or conclusions of law. (*Ibid.*) If the plaintiffs pled facts entitling them to relief, then the trial court erred in sustaining defendants' demurrers and dismissing defendants from the case.

 Plaintiffs' claims for harassment and retaliation are founded on the provisions of FEHA and are based exclusively on that statutory scheme since FEHA is not a codification of preexisting common law. (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 490 [156 Cal.Rptr. 14, 595 P.2d 592].) Accordingly, we apply the general rule that facts in support of each of the requirements of a statute upon which a cause of action is based must be specifically pled. (*G.H.I.I.* v. *MTS, Inc.* (1983) 147 Cal.App.3d 256, 273 [195 Cal.Rptr. 211, 41 A.L.R.4th 653].)

Plaintiffs' counsel steadfastly refused to amend the complaint to contain the detail necessary to show that the harassment was "severe" and "pervasive" even after the court indicated to counsel at the hearing on the first amended complaint that it wanted those concerns addressed. Plaintiffs' counsel indicated that there were no additional facts which could be pled in support of the cause of action for sexual harassment and that she would stand by the complaint. The material facts alleged in the second amended complaint are not significantly different from the facts alleged in the first amended complaint. Normally, we would presume that plaintiffs have stated their case as strongly as it can be stated and would resolve all ambiguities and uncertainties against them. (*Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 474 [199 Cal.Rptr. 613] disapproved on another point in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 688, 700, fn. 42 [254 Cal.Rptr. 211, 765 P.2d 373].)

However, not only is this case one of first impression, but the trial judge was without guidelines as to the specific details needed to be pled to

establish a cause of action for environmental sexual harassment. Furthermore, although the trial judge warned plaintiffs' counsel that the complaint was deficient in that it did not allege that Dr. Tischler's misconduct toward other women was either "systematic" or "pervasive," the court's ruling was based on the fact that the sexual harassment was not directed to Ms. Fisher. Therefore, we will order the trial court to grant plaintiffs leave to amend certain causes of action of their complaint.

## II. Environmental Sexual Harassment

The touchstone of this appeal is Ms. Fisher's contention that pursuant to FEHA, even though she was not the direct victim of sexual harassment, she pled a cause of action for environmental sexual harassment as recognized by the United States Supreme Court in *Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57 [91 L.Ed.2d 49, 106 S.Ct. 2399]. As discussed in this opinion, we conclude that Ms. Fisher did not successfully plead a cause of action for environmental sexual harassment.

"The FEHA establishes a comprehensive scheme for combating employment discrimination. [Citations.] As a matter of public policy, the FEHA recognizes the need to protect and safeguard the right and opportunity of all persons to seek and hold employment free from discrimination. (§ 12920.) [The Supreme Court] has declared that policy to be 'fundamental.' [Citation.]" (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272].)

"Moreover, the opportunity to be free from discriminatory practices in seeking, obtaining, and holding employment is a 'civil right.' (§ 12921.) Employment discrimination 'foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance, and substantially and adversely affects the interest of employees, employers, and the public in general.' (§ 12920.) The express purpose of the FEHA is 'to provide effective remedies which will eliminate such discriminatory practices.' (*Ibid.*) In addition, the Legislature has directed that the FEHA is to be construed 'liberally' so as to accomplish its purposes. (§ 12993.)" (37 Cal.3d at p. 486.)

FEHA prohibits a variety of unfair labor practices including discrimination "in terms, conditions or privileges of employment" on the basis of sex. (§ 12940, subd. (a).)[4] Furthermore, FEHA prohibits an employer from

---

[4] When we refer to section 12940, we are referring to former section 12940 (Stats. 1985, ch. 1151, § 2, p. 3891), the applicable statute in this matter. Effective January 1, 1988, section 12940 was amended with a minor wording change, the deletion of subdivision (h), and the re-

harassing an employee on the basis of sex, holds an employer liable for harassment of an employee by another employee if the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action, requires the employer to take all reasonable steps to prevent harassment from occurring, and prohibits retaliation against any person opposing any forbidden practice. (§ 12940, subds. (f), (i) and (j).)[5]

There are no California reported decisions addressing the issue of the requirements necessary to plead a cause of action for sexual harassment based on a hostile work environment. Accordingly, we look to both federal law and decisions of the California Fair Employment Housing Commission (hereafter FEHC) for guidance.

■ "Although the wording of the Fair Employment Housing Act and title VII of the federal Civil Rights Act of 1964 (see 42 U.S.C. § 2000e et seq.) differs in some particulars, the antidiscriminatory objectives and the overriding public policy purposes are identical and we refer to those federal decisions where appropriate." (*County of Alameda* v. *Fair Employment & Housing Com.* (1984) 153 Cal.App.3d 499, 504 [200 Cal.Rptr. 381].)

■ "[T]he administrative interpretation of a statute will be accorded great respect by the courts and will be followed if not clearly erroneous . . . [However,] [t]he ultimate interpretation of a statute is an exercise of the judicial power." (*Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325-326 [109 P.2d 935].)

FEHC has observed that where title VII precedent does not appear sound, or conflicts with the essential purposes of FEHA, FEHC does not rely on it. (*DFEH* v. *Church's Fried Chicken, Inc.* (1987) FEHC No. 87-18 at p. 12.) We note FEHC's unique procedural setting under the FEHA in which all but a very few of the cases prosecuted to the FEHC are heard by

---

designation of the remaining subdivisions. (See Historical Note, 33 West's Ann. Gov. Code (1989 pocket supp.) § 12940, p. 80.)

[5] In relevant part, these subdivisions provided that it was an unfair labor practice for an employer: (f) "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

. . . . . . . . . . . . . . . . . .
(i) "or any other person, because of . . . sex . . . to harass an employee or applicant. Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment."

(j) "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

an administrative law judge sitting alone and come before FEHC only after a full evidentiary hearing. (*Id.*, at p. 13.) Accordingly, we will view these precedents with caution since the instant matter is before us at the pleading stage.

■ Courts have generally recognized two distinct categories of sexual harassment claims: quid pro quo and hostile work environment. (*Hicks* v. *Gates Rubber Co.* (10th Cir. 1987) 833 F.2d 1406, 1413.) Quid pro quo harassment occurs when submission to sexual conduct is made a condition of concrete employment benefits. (*Ibid.*) There is no claim of quid pro quo harassment in the instant case.

The United States Supreme Court held that a plaintiff may establish a violation of title VII by proving that discrimination based on sex had created a hostile or abusive work environment regardless of whether the plaintiff suffered tangible or economic loss. (*Meritor Savings Bank* v. *Vinson, supra,* 477 U.S. 57, 58, 66 [91 L.Ed.2d 49, 54, 59].)

In determining that noneconomic injury was actionable, the United States Supreme Court looked to title VII and Equal Employment Opportunity Commission (hereafter EEOC) guidelines. Like section 12940, subdivision (a) of FEHA, title VII prohibits discrimination based on sex with respect to "compensation, terms, conditions, or privileges" of employment. (42 U.S.C. § 2000e-2(a)(1).) The United States Supreme Court noted that: "Title VII is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent ' " ' "to strike at the entire spectrum of disparate treatment of men and women in employment.' " ' " " (477 U.S. at p. 64 [91 L.Ed.2d at p. 58].)

Under EEOC guidelines, sexual harassment includes: " '[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.' 29 CFR § 1604.11(a) (1985) . . . such sexual misconduct constitutes prohibited 'sexual harassment,' . . . where 'such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' § 1604.11(a)(3)." (477 U.S. at p. 65 [91 L.Ed.2d at pp. 58-59].) The general goal of the EEOC guidelines is prevention. (*Bundy* v. *Jackson* (D.C. Cir. 1981) 641 F.2d 934, 947 [205 App.D.C. 444].)

FEHC stated that: "As our regulations make clear, almost any type of conduct may constitute sexual harassment. The potential range includes, but is not limited to, conduct which is verbal, physical, or visual, where the focus is sex, as well as the proffering of unwanted sexual advances, and/or conditioning employment benefits on the victim's acquiescence. (Cal.

Admin. Code, tit. 2, § 7287.6, subd. (b)(1) and § 7291.1, subd. (f)(1).)" (*DFEH* v. *Bee Hive Answering Service* (1984) FEHC No. 84-16 at p. 18.)

FEHC recognizes a cause of action for work environment sexual harassment. (See cases collected in *DFEH* v. *Bee Hive Answering Service, supra,* FEHC No. 84-16 at p. 16.) The FEHC held that "conduct amounting to sexual harassment which deprives its victims of this substantial benefit [to a discrimination-free work environment pursuant to Cal. Admin. Code, tit. 2, § 7286.5, subd. (f)(3) and § 7287.6] is itself unlawful under [FEHA], whether or not the harassment also results in the loss of some more tangible employment benefit." (*Id.,* at p. 17.) FEHA specifically provides that: "Loss of tangible job benefits shall not be necessary in order to establish harassment." (§ 12940, subd. (i).)

FEHC reasoned that: "Sexual harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives its victim of her statutory right to work in a place free of discrimination, when the sexually harassing conduct sufficiently offends, humiliates, distresses or intrudes upon its victim, so as to disrupt her emotional tranquility in the workplace, affect her ability to perform her job as usual, or otherwise interferes with and undermines her personal sense of well-being." (*DFEH* v. *Bee Hive Answering Service, supra,* FEHC No. 84-16 at pp. 18-19.)

We conclude that pursuant to FEHA, under certain circumstances, the creation of an offensive or hostile work environment due to sexual harassment can violate FEHA irrespective of whether the complainant suffers tangible job detriment.

We adopt the requirements for a prima facie claim of environmental sexual harassment set out in *Priest* v. *Rotary* (N.D.Cal. 1986) 634 F.Supp. 571, 582, and *Henson* v. *City of Dundee* (11th Cir. 1982) 682 F.2d 897, 903-905. The elements are: (1) plaintiff belongs to a protected group; (2) plaintiff was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) respondeat superior.[6]

---

[6] Under FEHA, an employer is "strictly liable for the harassing conduct of its agents and supervisors." (*DFEH* v. *Bee Hive Answering Service, supra,* FEHC No. 84-16 at p. 23.) The standard for coworker liability is that an employer is liable where it, its agents or supervisors " 'knows or should have known of this conduct and fails to take immediate and appropriate corrective action.' " (*DFEH* v. *Madera County, supra,* FEHC No. 88-11 at p. 22.)

SPPH asserts that it is not liable for the misconduct of Dr. Tischler as he is neither an employee nor an agent of the hospital, but rather is an independent contractor and as such is excluded from the definition of employee under FEHC regulations. FEHC regulations state that an employee is: "Any individual under the direction and control of an employer under

## III. Plaintiffs' Claims

### A. Ms. Fisher Has Not Pled a Cause of Action for Environmental Sexual Harassment or Retaliation

#### 1. Environmental sexual harassment

The critical question in the instant case is whether Ms. Fisher pled sufficient facts to establish that an atmosphere of pervasive or severe sexual harassment existed in her work environment at SPPH. "For [hostile work environment] sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" (*Meritor Savings Bank* v. *Vinson, supra,* 477 U.S. 57, 67 [91 L.Ed.2d 49, 60].)

 Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances. (*Henson* v. *City of Dundee, supra,* 682 F.2d 897, 904.) The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's[7] work performance and would

---

any appointment or contract of hire or apprenticeship, express or implied, oral or written. . . . [¶] Employee does not include an independent contractor as defined in Labor Code Section 3353." (Cal. Code Regs., tit. 2, § 7286.5, subds. (b) and (b)(1).)

Labor Code section 3353 defines an independent contractor as "any person who renders service for a specified recompense for a specified result, under the *control of his principal as to the result of his work only* and not as to the means by which such result is accomplished." (Italics added.)

Whether Dr. Tischler is an independent contractor is an affirmative defense which must be asserted and proved by SPPH at the time of trial. (Cf. *Germann* v. *Workers' Comp. Appeals Bd.* (1981) 123 Cal.App.3d 776, 783 [176 Cal.Rptr. 868].) The determination of whether a person is an employee or an independent contractor is made based on a number of factors. (See discussion of determination of employment status in context of workers' compensation in *S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341, 349-360 [256 Cal.Rptr. 543, 769 P.2d 399].)

Whether a person is an independent contractor or an employee is a question of fact if dependent upon the resolution of disputed evidence or inferences. (48 Cal.3d at p. 349.) If the evidence is undisputed, the question becomes one of law. (*Ibid.*) Of course, in the instant case, the determination of whether Dr. Tischler is an employee will be made in the context of the purposes behind FEHA, not workers' compensation. (*Id.*, at p. 354.)

The complaint alleges that SPPH's board of directors is authorized to accept or reject a doctor, that the board has the responsibility to insure that the members of the medical staff are of high ethical character and that there is an employee manual which prohibits sexual harassment of employees and promises disciplinary action against the perpetrator. If plaintiffs can prove these allegations, we express grave doubts as to SPPH's ability to prove that doctors are independent contractors so as to exempt SPPH from liability for sexual harassment of hospital employees by doctors.

[7]Another district court noted that "the conduct complained of would have interfered with the work performance and would have seriously affected the psychological well-being of a

have seriously affected the psychological well-being of a reasonable employee and that she was actually offended. (*Ross* v. *Double Diamond, Inc.* (N.D.Tex. 1987) 672 F.Supp. 261, 270.)

■ The factors that can be considered in evaluating the totality of the circumstances are: (1) the nature of the unwelcome sexual acts or works (generally, physical touching is more offensive than unwelcome verbal abuse); (2) the frequency of the offensive encounters; (3) the total number of days over which all of the offensive conduct occurs; and (4) the context in which the sexually harassing conduct occurred. (672 F.Supp. at pp. 270-271.)

In determining what constitutes "sufficiently pervasive" harassment, the courts have held that acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature. (*Downes* v. *F.A.A.* (D.C. Cir. 1985) 775 F.2d 288, 293 [243 App.D.C. 323].)

"[W]hile an employee need not prove tangible job detriment to establish a sexual harassment claim, the absence of such detriment requires a commensurately higher showing that the sexually harassing conduct was pervasive and destructive of the working environment." (*Jones* v. *Flagship Intern.* (5th Cir. 1986) 793 F.2d 714, 720.)

■ There is dicta in *Vinson* v. *Taylor* (D.C. C. 1985) 753 F.2d 141, affirmed in part and reversed in part *sub. nom. Meritor Savings Bank* v. *Vinson, supra,* 477 U.S. 57 that: "Even a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive."[8] (*Id.*, at p. 146.) Such a claim would require an even higher showing than a claim where there was no tangible job detriment by one who had been sexually harassed. It would be necessary to establish that the sexually harassing conduct permeated the plaintiff's direct work environment.

"Evidence of the general work atmosphere, involving employees other than the plaintiff, is relevant to the issue of whether there existed an atmosphere of hostile work environment. . . ." (*Broderick* v. *Ruder* (D.D.C. 1988) 685 F.Supp. 1269, 1277.) Therefore, one who is personally subjected

---

*reasonable female employee.*" (Italics added.) (*Spencer* v. *General Elec. Co.* (E.D.Va. 1988) 697 F.Supp. 204, 218.)
 We conclude that when evaluating a sexual harassment claim, a reasonable employee is one of the same sex as the complainant.
 [8]To state that an employee must be the direct victim of the sexually harassing conduct is somewhat misleading as an employee who is subjected to a hostile work environment is a victim of *sexual harassment* even though no offensive remarks or touchings are directed to or perpetrated upon that employee.

to offensive remarks and touchings can establish a hostile work environment by showing that harassment existed in the place of employment. However, one who is not personally subjected to such remarks or touchings must establish that she personally witnessed the harassing conduct and that it was in her immediate work environment.

For instance, it is not enough to allege that harassment occurred in the hospital; a plaintiff who is not a direct victim must also allege exactly what occurred in her presence in her immediate work environment and describe that work environment. In other words, if Ms. Fisher knew that Dr. Tischler was harassing nurses when he was in the operating room, but she did not work with him in that operating room, she would not have been exposed to a hostile work environment.

Courts have concluded that a hostile work environment existed where there was a pattern of continuous, pervasive harassment. (See e.g., *Meritor Savings Bank* v. *Vinson, supra,* 477 U.S. 47, 60 [91 L.Ed.2d 49, 55] [The plaintiff had agreed to 40 or 50 acts of intercourse with her supervisor after repeated demands for sexual favors. The supervisor also "fondled her in front of other employees, followed her into the women's restroom when she went there alone, exposed himself to her, and even forcibly raped her on several occasions."]; *Hall* v. *Gus Const. Co., Inc.* (8th Cir. 1988) 842 F.2d 1010, 1012 [Constant verbal abuse, requests for sexual relations, unwanted touching directed to female traffic controllers at construction site and urinating in plaintiffs' water bottles and gas tanks.]; *Broderick* v. *Ruder, supra,* 685 F.Supp. 1269, 1277-78 [Plaintiff, who was sexually harassed by several male supervisors, showed pervasive nature of conduct by establishing that employer afforded preferential treatment to female employees who submitted to sexual advances or other sexual conduct and such conduct was a matter of common knowledge.]; *Yates* v. *Avco Corp.* (6th Cir. 1987) 819 F.2d 630, 632 [Supervisors' constant rude comments to and requests for sexual favors from plaintiffs.]; *Katz* v. *Dole* (4th Cir. 1983) 709 F.2d 251, 254 [Coworkers' systematic infliction of extremely vulgar and offensive sexual slurs and insults to a female air traffic controller.]; *Henson* v. *City of Dundee, supra,* 682 F.2d 897 [Police chief's numerous harangues and demeaning sexual inquiries and vulgarities as well as repeated requests that plaintiff have sexual relations with him.]; *Bundy* v. *Jackson, supra,* 641 F.2d 934, 940, 943 [Sexually stereotyped insults such as " 'any man in his right mind would want to rape you' " and propositions directed to plaintiff by her supervisors over a two-year period amounted to the "standard operating procedure" of the agency.].)

On the other hand, courts have concluded that isolated instances of sexual harassment do not constitute a hostile work environment. (See, e.g.,

*Jones* v. *Flagship Intern., supra,* 793 F.2d 714, 716 [supervisor's two suggestive remarks and a single proposition of plaintiff]; *Rabidue* v. *Osceola Refining Co.* (6th Cir. 1986) 805 F.2d 611, 615, 622 [Even though coworker was extremely vulgar and crude and in confrontation posture with plaintiff and nude photos were present, totality of the workplace was not affected.]; *Scott* v. *Sears, Roebuck & Co.* (7th Cir. 1986) 798 F.2d 210, 214 [isolated winks, suggestive remarks and a coworker's single request for a date with plaintiff]; *Downes* v. *F.A.A., supra,* 775 F.2d 288, 293 [Defendant engaged in mildly offensive verbal conduct on three occasions and twice touched plaintiff's hair.].)

FEHC has likewise found environmental sexual harassment in cases where a pattern of continuous harassment existed. (See e.g., *DFEH* v. *Fresno Hilton Hotel* (1984) FEHC No. 84-03 [Complainant's supervisor harassed her virtually every day for nine months by making repeated demands for sexual favors and by fondling and kissing her.]; *DFEH* v. *Del Mar Avionics* (1985) FEHC No. 85-19 [Supervisor engaged in "regular stream" of sexual and racial comments including one particularly vulgar verbal attack.]; *DFEH* v. *Jack's Restaurant* (1984) FEHC No. 84-08 [restaurant owner's numerous sexually suggestive and explicit comments, fondling of and repeated requests for dates with complainant waitress over a period of approximately one year]; *DFEH* v. *Bee Hive Answering Service, supra,* FEHC No. 84-16 [incessant stream of sexual comments, unwanted touchings and propositions directed to plaintiff as well as outbursts of rage upon rejection]; *DFEH* v. *Hart and Starkey Inc.* (1984) FEHC No. 84-23 [Four complainants were constantly subjected to supervisor's sexual comments, unwanted touchings and explicit propositions.]; *DFEH* v. *Rockwell International Corp.* (1987) FEHC No. 87-34 [supervisor's repeated sexual comments about and directed to complainant and repeated requests that complainant go out with him].)

■ Ms. Fisher alleged that Dr. Tischler created a hostile work environment for her by his sexual harassment of other women employees in her presence. Ms. Fisher's entire factual basis for this claim is contained in one paragraph which alleges that Dr. Tischler's acts included: "[P]ulling nurses onto his lap, hugging and kissing them while wiggling, making offensive statements of a sexual nature, moving his hands in the direction of [a] woman's vaginal area, grabbing women from the back with his hands on their breasts or in the area of their breasts, picking up women and swinging them around, throwing a woman on a gurney, walking up closely behind a woman with movements of his pelvic area. [Ms. Fisher] saw him commit acts of sexual harassment against [three named] nurses. The acts were committed in hallways, the operating room, and the lunch room of [SPPH] from 1982 to 1986. None of the women welcomed the advances and

indicated to [Dr. Tischler] they were offensive by moving away from him, avoiding him whenever possible, or telling him to stop. Julie also was forced to hear [Dr. Tischler] make lewd remarks about the breasts of anesthetized female patients."

Even at the pleading stage, such allegations are simply not sufficient to establish a cause of action for environmental sexual harassment since none of the acts were directed at Ms. Fisher. We are cognizant that the trial court stayed discovery. However, in the instant case, the testimony of other employees about Dr. Tischler could only corroborate Ms. Fisher's observations. Ms. Fisher could not have suffered from working in a hostile environment unless she was personally exposed to it. It is not sufficient to plead that a pattern of sexual harassment existed at SPPH. Ms. Fisher, being percipient, should have been able, and was properly required by the law and motion judge, to allege sufficient facts to establish that *her work environment* was permeated by sexual harassment.

Given the ease with which these claims can be made despite their serious nature, as a matter of fairness, a plaintiff should be required to plead sufficient facts to establish a nexus between the alleged sexual harassment of others, her observation of that conduct and the work context in which it occurred.

Although the complaint describes in general terms what acts occurred and where they occurred, it only alleges in a most conclusionary manner that Ms. Fisher saw Dr. Tischler commit sexual harassment against three named nurses. What acts she observed are not detailed and are left to the imagination. Even though it is reasonable to assume that she observed Tischler commit all the alleged acts, the complaint is deficient as there is no indication of the frequency or intensity with which these acts occurred.

Did each alleged act occur once in four years or did the acts occur on a daily or weekly basis? Which acts occurred with any frequency—the remarks or the offensive touchings? What acts occurred within the FEHA's one-year statute of limitations (§ 12960)? Although acts beyond the statute of limitations might be relevant to showing a pattern of continuous harassment (see *Spencer* v. *General Elec. Co., supra,* 697 F.Supp. 204, 218, fn. 17), if only a couple of acts occurred during the one year preceding the filing of the complaint, then Ms. Fisher cannot properly plead a claim for environmental sexual harassment.

Again, only a legal conclusion is pled regarding the alleged remarks. What lewd remarks did Tischler make about the breasts of anesthetized female patients; exactly what were the offensive statements of a sexual

nature? Despite the fact that Dr. Tischler ceased his harassment of Ms. Fisher after she complained,[9] she lodged no complaint about his harassment of others even though the acts took place over several years. Although Ms. Fisher alleges that the acts occurred in the hospital and a conclusion that Dr. Tischler controlled Ms. Fisher's employment by giving her orders and making recommendations about her performance, no facts are alleged about the size of the hospital or the size of its staff, how often Ms. Fisher was in Tischler's presence or what were the circumstances of the surroundings— did she observe these acts in passing or did they occur when she was required to work with Tischler? In *Spencer* v. *General Elec. Co., supra,* 697 F.Supp. 204, 218, footnote 17, rampant sexual horseplay in a confined trailer office was determined to be sufficient to establish a hostile environment. Hallways and a lunch room do not connote a confined environment.

As alleged, the facts show aberrant behavior by one doctor over an extended period. We are swift to agree with Justice Johnson in his concurring opinion that the alleged conduct of Dr. Tischler is more than just sophomoric antics but if proved consists of egregious, hostile and unacceptable conduct. However, these facts, no matter how they are characterized, are more like isolated incidents and do not sufficiently plead that Ms. Fisher was subjected to a pattern of pervasive sexual harassment. Our concern is with the insufficiency of the pleading and the nexus between the alleged acts and Ms. Fisher's work environment.

If Ms. Fisher can properly plead a cause of action for environmental sexual harassment, then she will have pled the predicate behavior for constructive discharge (*Young* v. *Southwestern Savings and Loan Association* (5th Cir. 1975) 509 F.2d 140, 144 and *DFEH* v. *Jack's Restaurant, supra,* FEHC No. 84-08 at p. 9) and failure to take appropriate corrective action. (§ 12940, subds. (i) and (j).)[10]

### 2. Retaliation

■ To establish a prima facie case of retaliation, a plaintiff must show that she engaged in a protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two. (*Wrighten* v. *Metropolitan Hospitals, Inc.* (9th Cir. 1984) 726 F.2d 1346, 1354.)

---

[9] Since FEHA has a one-year statute of limitations (§ 12960), the plaintiffs have no cause of action for Dr. Tischler's alleged harassment of Ms. Fisher in 1982 nor SPPH's alleged failure to take corrective action at that time.

[10] Whether SPPH took immediate and appropriate corrective action and all the reasonable steps to prevent harassment from occurring are questions of fact to be decided at the time of trial, not at the pleading stage.

The retaliatory motive is "proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter." (*Jones* v. *Lyng* (D.D.C. 1986) 669 F.Supp. 1108, 1121.) "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" (*Jordan* v. *Clark* (9th Cir. 1988) 847 F.2d 1368, 1376.)

Citing *Henson* v. *City of Dundee, supra,* 682 F.2d 897 and *Katz* v. *Dole, supra,* 709 F.2d 251, Ms. Fisher argues that an employer is liable when supervisors or coworkers retaliate by creating a hostile work environment. These cases are inapposite as neither case deals with retaliation.

These cases stand in part for the proposition that when an employee seeks to hold an employer responsible for a hostile environment, the employee must show that the employer knew or should have known of the harassment in question; an employer's knowledge can be demonstrated by showing the pervasiveness of the harassment, which gives rise to an inference of knowledge or constructive knowledge. (*Henson* v. *City of Dundee, supra,* 682 F.2d 897, 905; *Katz* v. *Dole, supra,* 709 F.2d 251, 255.)

However, SPPH might be liable for retaliation amounting to a hostile work environment if Ms. Fisher can establish that the hostile work environment was created as retaliation for her complaints regarding sexual harassment. (See *Monge* v. *Superior Court* (1986) 176 Cal.App.3d 503, 507 [222 Cal.Rptr. 64].) ▮▮ Ostracism, of course, does not amount to a hostile environment, and no cause of action can be pled on that basis alone.

**B. Dr. Fisher Has Pled a Cause of Action for Retaliation Against SPPH, but Not Against Dr. Brow.**

**1. Dr. Brow**

▮▮ Section 12940, subdivision (f) prohibits retaliation by an employer against *any person* opposing any forbidden practice or filing an FEHA complaint. Dr. Brow was a coworker of Dr. Fisher's, not his employer. Accordingly, any retaliation he took was not actionable under FEHA.

Effective January 1, 1988, section 12940, subdivision (f) was amended so that it is now also an unfair labor practice for "any person" to retaliate against a person who opposes any forbidden practice. ▮▮ "It is settled . . . that no statute is to be given retroactive effect unless the Legislature

has expressly so declared." (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865].) ■■■ There is no such expression in the amendment to section 12940; therefore, it is not applicable to the matter before us.

For the first time in the reply brief, Dr. Fisher asserts that Dr. Brow is liable for retaliation against Dr. Fisher under section 12940, subdivision (g).[11] ■■■ The rule is that points raised in a reply brief for the first time will not be considered unless good cause is shown for the failure to present them before. (*Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1009 [197 Cal.Rptr. 250].)

## 2. SPPH

■■■ First of all, Dr. Fisher argues that SPPH retaliated against him for his complaints about Dr. Brow because it did not take action against Dr. Brow's retaliation in refusing to examine Dr. Fisher's patients. Dr. Fisher has no cause of action based on retaliation by another doctor.

Dr. Fisher's cases are inapposite. *De Medina* v. *Reinhardt* (D.D.C. 1978) 444 F.Supp. 573, proscribes employer retaliation against a third party for opposing forbidden practices. (*Id.,* at p. 580.) As already noted Dr. Brow is not an employer. Dr. Fisher is not a third party against whom an employer retaliated, rather he is a party who allegedly suffered retaliation by a third party (Dr. Brow).

Dr. Fisher argues that under *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332 [183 Cal.Rptr. 156], SPPH has a duty to insure that staff doctors do not retaliate against fellow doctors who protest discriminatory employment practices. *Elam* holds that a hospital can be held liable to *a patient* for negligently screening the competency of its medical staff to insure the adequacy of medical care rendered to patients. (*Id.,* at pp. 340-341.) Dr. Fisher is not a patient, and we would not extend this corporate hospital liability for negligent acts to a suit for retaliation by another staff physician.

Second, Dr. Fisher argues that SPPH retaliated against him by refusing to renew his lease for the office he had rented for many years after he filed a complaint with the Department of Fair Employment and Housing (hereafter DFEH). The office remained vacant at the time the second amended complaint was filed.

---

[11] Section 12940, subdivision (g) provides that it is an unfair labor practice "[f]or any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

We note that Dr. Fisher did not plead the date when the FEHA complaint was filed or the date the lease was cancelled, that the lease was cancelled because he filed an FEHA complaint, or that SPPH knew that he filed the FEHA complaint. However, reading the complaint liberally, it is reasonable to infer that the reason SPPH refused to renew the lease was because of the FEHA complaint, especially since Dr. Fisher had occupied the office for many years, and it was still vacant when the second amended complaint was filed.

DFEH notifies an employer within 45 days after a complaint is filed. (§ 12962.) In order to bring a civil suit, a complainant must have a "right to sue" letter which is issued by DFEH if an accusation is not issued or other acts taken within 150 days after the filing of the FEHA complaint. (§ 12965, subd. (b); *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1384 [241 Cal.Rptr. 67, 743 P.2d 1323].) Since the civil suit must be brought within one year of the letter (§ 12965, subd. (b)), we assume that the lease was cancelled shortly after SPPH knew of Dr. Fisher's filing an FEHA complaint. Failure to renew an office lease affects a condition of employment and is the type of conduct proscribed by former section 12940, subdivision (f).

Although under the principle of a liberal reading of the complaint, Dr. Fisher has probably alleged a cause of action for retaliation against SPPH based on the cancellation of his office lease, if plaintiffs decide to amend their complaint, they would be well advised to clarify that the lease was cancelled because of Dr. Fisher's complaint to DFEH and that SPPH knew of that complaint and cancelled the lease shortly thereafter.

C. Neither Ms. Fisher nor Dr. Fisher Has Pled a Cause of Action for Intentional Infliction of Emotional Distress

██ "The elements of a cause of action for intentional infliction of emotional distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress." (*Molko* v. *Holy Spirit Assn.* (1986) 46 Cal.3d 1092, 1120 [252 Cal.Rptr. 122, 762 P.2d 46].)

Conduct is extreme and outrageous when it exceeds all bounds of decency usually tolerated by a decent society, and is of a nature which is especially calculated to cause, and does cause, mental distress. (46 Cal.3d at p. 1122.) Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. (*Ibid.*) ██ Without a

properly pled cause of action for sexual harassment, Ms. Fisher has not pled any outrageous conduct by either Dr. Tischler or SPPH.

FEHC infers a large measure of emotional injury from sexual harassment since sexual harassment is often inherently oppressive and malicious. (*DFEH* v. *Jack's Restaurant, supra,* FEHC No. 85-08 at pp. 12-13.) Given an employee's fundamental, civil right to a discrimination free work environment (§§ 12920, 12921), by its very nature, sexual harassment in the work place is outrageous conduct as it exceeds all bounds of decency usually tolerated by a decent society.

Accordingly, if properly pled, sexual harassment will constitute the outrageous behavior element of a cause of action for intentional infliction of emotional distress against Dr. Tischler. (See *Monge* v. *Superior Court, supra,* 176 Cal.App.3d 503, 507, 511.)

■ An employer is liable for the wilful and malicious torts of its employees committed in the scope of employment. (*John R.* v. *Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 447 [256 Cal.Rptr. 766, 769 P.2d 948].) ■ Thus, if Ms. Fisher properly pleads an environmental sexual harassment cause of action, then she will have also pled sufficient facts to establish a claim against SPPH for intentional infliction of emotional distress. However, we note that in order to hold SPPH liable for Dr. Tischler's tort of intentional infliction of emotional distress, plaintiffs will have to prove that Ms. Fisher was a victim of sexual harassment, that Dr. Tischler is an employee of SPPH and that Dr. Tischler was acting within the scope of his employment. (*Ibid.*)

■ Dr. Fisher has likewise not pled any facts showing any extreme and outrageous conduct. Dr. Fisher based his claim on the fact that SPPH cancelled his lease in retaliation for his filing an FEHA complaint and refused to prevent Dr. Brow from refusing to examine Dr. Fisher's patient, that Dr. Brow refused to examine his patients, and that Dr. Brow endangered a child's life by refusing to examine the child. Such acts are mere indignities or threats and do not evidence behavior beyond the bounds of decency. Thus, Dr. Fisher has no cause of action against either Dr. Brow or SPPH.

D. Neither Ms. Fisher nor Dr. Fisher Has Pled a Cause of Action for Interference With Business Relations

■ This tort is also called interference with prospective economic advantage. "The elements of the tort of intentional interference with prospective economic advantage are: (1) an economic relationship between the

plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 330 [216 Cal.Rptr. 718, 703 P.2d 58].)

The actionable wrong lies in the inducement to break the contract or to sever the relationship. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 822 [122 Cal.Rptr. 745, 537 P.2d 865].) "[T]he defendant's motive is crucial." (*Hoffman Co.* v. *E. I. Du Pont de Nemours & Co.* (1988) 202 Cal.App.3d 390, 402 [248 Cal.Rptr. 384].) "The plaintiff must not only plead and prove intentional acts, but also that such acts were *designed* to disrupt the formation of a prospective economic relationship." (Original italics.) (*Ibid.*)

"The interest protected . . . is the interest in reasonable expectations of economic advantage." (*Worldwide Commerce, Inc.* v. *Fruehauf Corp.* (1978) 84 Cal.App.3d 803, 808 [149 Cal.Rptr. 42].) The expectancies are limited to two basic situations. "One is the situation where the tortfeasor induces or otherwise purposely causes a third party not to enter into a business relation with the plaintiff, . . . In the second situation the plaintiff and a third party are already in a business relationship which is terminable at the will of the third party and the tortfeasor induces or otherwise purposely causes the third party to terminate the relationship . . . ." (*Ibid.*)

■ Ms. Fisher alleged that Dr. Tischler "embarked on a course of intentional conduct . . . designed to disrupt the relationship between Plaintiff and [SPPH] and to interfere with Plaintiff's duty to protect patient care." Ms. Fisher has pled a legal conclusion, not facts.

Ms. Fisher argues that Dr. Tischler created a hostile work environment which was designed to disrupt her relationship with SPPH. As already discussed, Ms. Fisher failed to allege a hostile work environment. Furthermore, even if properly pled there is no logical inference that Dr. Tischler intended to disrupt Ms. Fisher's relationship with SPPH by his harassment of other employees.

■ Dr. Fisher alleged that Dr. Brow's intentional acts were designed "to disrupt the relationship [Dr. Fisher] had with [SPPH] and with his patients." Dr. Brow's intentional acts consisted of stating that he would not examine Dr. Fisher's patients because Dr. Fisher had harassed Dr. Tischler by reporting Tischler to SPPH. Dr. Fisher argues that Dr. Brow had a duty to perform medical examinations for Dr. Fisher's patients and to examine

all sick children when Dr. Brow was on call regardless of whose patients they were.

Although Dr. Fisher alleged that Dr. Brow "actually disrupted the relationship by forcing Dr. Fisher to seek out other physicians . . . thereby threatening the welfare of Dr. Fisher's patients," there is no allegation that Dr. Fisher lost patients. Having to seek other physicians or threats to patient welfare are not the kind of *economic interest* which this tort was designed to protect. (See *Worldwide Commerce* v. *Fruehauf Corp., supra,* 84 Cal.App.3d 803, 810.) Nor is this analogous to a situation where a doctor is denied his right to pursue a profession by other competing doctors who conspire to keep patients from the doctor.

E. No Cause of Action Supports Punitive Damages

■■■ As pled, the only possible viable cause of action is for retaliation based upon SPPH's refusal to renew Dr. Fisher's office lease. Even though punitive damages are available in a civil action under FEHA where the defendant was guilty of oppression, fraud or malice under Civil Code section 3294 (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 215, 221 [185 Cal.Rptr. 270, 649 P.2d 912]), the facts of this case do not support punitive damages.

Punitive damages based on retaliation were permitted in *Monge* v. *Superior Court, supra,* 176 Cal.App.3d 503, in which the Court of Appeal reversed an order striking punitive damages allegations. The alleged retaliation was that defendant officers "engaged upon a systematic course of retaliation by 'creat[ing] an intimidating, hostile and offensive working environment for each of the Plaintiffs' that 'changed Plaintiffs' working environment, hours, lunch and other privileges, and demoted the Plaintiffs to lesser positions, all in retaliation against the Plaintiffs for their complaints regarding sexual harassment.'" (*Id.,* at p. 507.)

No similar acts are alleged in the instant case. Such a refusal does not amount to oppression or malice and is not like sexual harassment which in itself pleads the evil motive necessary to support punitive damages or emotional distress. (176 Cal.App.3d at p. 511.) Retaliation by itself is not equivalent to the indignities inflicted by sexual harassment, but must be evaluated by the acts of retaliation.

Although in *Monge,* the court looked to the meanings of "oppression" and "malice" in former Civil Code section 3294 to determine the sufficiency of the punitive damages allegations, the court's reasoning is instructive. The court noted that: "'Malice' means a wrongful intent to vex or annoy.

'Oppression' means 'subjecting a person to cruel and unjust hardship in conscious disregard of his rights.'" (176 Cal.App.3d at p. 511.) The court concluded that: "a deliberate intent on the part of defendants to sexually harass and then to retaliate against plaintiffs, causing them to suffer significant mental anguish on the job without regard for their right to be free from such oppressive and hostile employment conditions . . . pleads defendants' actions as having an unequivocally evil and mischievous motive." (*Ibid.*)

The recently amended Civil Code section 3294[12] will apply to the instant case. (Civ. Code, § 3294, subd. (e).) This section now defines "malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others" and "oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c) (1) and (2).) ■ We conclude that sexual harassment is subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights and therefore supports punitive damage allegations (Cf. *Krieger* v. *Pacific Gas & Electric Co.* (1981) 119 Cal.App.3d 137, 148 [173 Cal.Rptr. 751].)

Accordingly, once again, if Ms. Fisher properly pleads a sexual harassment cause of action, she will plead sufficient facts to support punitive damages allegations against Dr. Tischler. However, in order to successfully plead punitive damage allegations against SPPH based on Dr. Tischler's acts, Ms. Fisher will have to plead facts to show that SPPH ratified those acts pursuant to Civil Code section 3294, subdivision (b).[13]

"Ratification . . . may be established by any circumstantial or direct evidence demonstrating adoption or approval of the employee's actions by the corporate agent. [Citations.] Such ratification may be inferred from the fact that the employer, after being informed of the employee's actions, does not fully investigate and fails to repudiate the employee's conduct by redressing the harm done and punishing or discharging the employee. [Citations.]" (*DFEH* v. *Hart and Starkey, Inc., supra,* FEHC No. 84-23 at p. 37.) (See fn. 9, *ante.*)

---

[12] SPPH asserts that Civil Code section 3294 is unconstitutional on its face because there is no legislatively prescribed maximum limit and no fixed standards. This argument was rejected a long time ago. (*Toole* v. *Richardson-Merrell, Inc.* (1967) 251 Cal.App.2d 689, 719 [60 Cal.Rptr. 398, 29 A.L.R.3d 988].)

[13] Subdivision (b) provides that: "An employer shall not be liable for damages . . . based upon acts of an employee of the employer, unless the employer . . . ratified the wrongful conduct. . . . With respect to a corporate employer, the . . . ratification . . . must be on the part of an officer, director, or managing agent of the corporation."

## F. Workers' Compensation Preemption

 The court's finding that Ms. Fisher's claims were preempted by the Workers' Compensation Act was a correct one since she did not successfully plead an FEHA cause of action. Had Ms. Fisher pled a viable cause of action under FEHA, then preemption would not be applicable under our holding in *Jones* v. *Los Angeles Community College Dist.* (1988) 198 Cal.App.3d 794, 807-809 [244 Cal.Rptr. 37] and *Watson* v. *Dept. of Rehabilitation* (1989) 212 Cal.App.3d 1271 [261 Cal.Rptr. 204].

### CONCLUSION

Ms. Fisher is being provided with an opportunity to amend only the first cause of action of the second amended complaint to include the specific detail necessary to establish a cause of action for environmental sexual harassment. Of particular concern is that she establish that the sexual harassment was pervasive by pleading facts showing a nexus between the alleged sexual harassment of others, her observation of the sexual harassment and its occurrence in her direct work environment. As indicated previously this appears to be a case of first impression and the trial judge and counsel are now armed with an appellate holding on the applicable law. We deem it prudent to allow the plaintiffs to file a third amended complaint in accordance with the holding herein.

If Ms. Fisher successfully pleads a cause of action for sexual harassment, then the fifth cause of action for intentional infliction of emotional distress against Dr. Tischler and SPPH will in turn be legally viable.

No leave will be granted to amend the sixth cause of action for infliction of emotional distress by Dr. Fisher against Dr. Brow and SPPH as he has not alleged any outrageous conduct by those defendants directed to him.

Dr. Fisher is given leave to replead his third cause of action for retaliation against SPPH for cancellation of his office lease commensurate with the comments herein contained. Leave to amend by Dr. Fisher to plead a cause of action for retaliation against Dr. Brow is not granted since we hold that such a cause of action cannot be maintained under the facts of this case.

No leave will be granted to amend the second and fourth causes of action for interference with business relations as neither plaintiff can plead such a cause of action under the facts of this case.

### DISPOSITION

The order of dismissal is reversed and remanded with directions to enter a new and different order dismissing the action against Dr. Brow, but

granting plaintiffs leave to amend the first cause of action for sex discrimination and granting Dr. Fisher leave to amend his third cause of action for retaliation, against SPPH, based on SPPH's cancellation of Dr. Fisher's office lease. Appellants to recover costs on appeal from defendants and respondents San Pedro Peninsula Hospital and Barry Tischler. Defendant and respondent, Frank Brow, is to recover costs on appeal from the appellants.

Lillie, P. J., concurred.

**JOHNSON, J., Concurring and Dissenting.**—I concur with the majority's reversal of the judgment as to Ms. Fisher's cause of action for environmental sexual harassment and Mr. Fisher's cause of action for retaliation. However, I believe Ms. Fisher's allegations contained in her second amended complaint are sufficient to state a cause of action under the California Fair Employment and Housing Act (the Act) and, thus, no additional pleading is required.

Ms. Fisher alleges that from 1982 to 1986, Dr. Tischler committed various acts of sexual harassment including "pulling nurses onto his lap, hugging and kissing them while wiggling, making offensive statements of a sexual nature, moving his hands in the direction of woman's [sic] vaginal area, grabbing women from the back with his hands on their breasts or in the area of their breasts, picking up women and swinging them around, throwing a woman on a gurney, walking up closely behind a woman with movements of his pelvic area. . . . The acts were committed in hallways, the operating room and lunch room of Defendant Hospital . . . ."

By my count, these allegations indicate *at least* 12 separate instances of sexual harassment and misconduct which occurred throughout Ms. Fisher's work environment during a 4-year period.[1] I believe this number of instances is sufficient to establish a pervasive pattern of sexual harassment which is actionable under the Act.

I also wish to take issue with both the trial court and respondents' characterization of this conduct. The trial court referred to Dr. Tischler's alleged conduct as "sophomoric antics," a theme perpetuated by respondents. Relegating this conduct to such a category is both demeaning and dishonest. Grabbing a woman's breasts, gesturing towards a woman's vaginal area or even making offensive sexual statements to another is far from being merely sophomoric. It is egregious, hostile conduct which should not be condoned or excused to immaturity. The Legislature has clearly man-

---

[1] I calculated this number by counting each separate act framed in the singular as one and those acts framed in the plural as two. Of course, Ms. Fisher may be referring to many more instances than two when she uses the plural.

dated hostile sexual work environments are no longer to be tolerated. We should not eviscerate this legislative mandate by disguising offensive conduct under a guise of horseplay or good-natured fun. It is neither.

In sum, I would conclude Ms. Fisher pled with sufficient particularity those facts necessary to maintain an action for environmental sexual harassment. Accordingly, I would reverse the judgment as to that cause of action without requiring any additional pleading.

Respondents' petition for review by the Supreme Court was denied January 18, 1990.