Filed 12/31/15  Kirkwood v. Saks Fifth Avenue CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BYRON KIRKWOOD, | B257433 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC500558) |
| v. | |
| SAKS FIFTH AVENUE, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Law Offices of Gene Ramos and Gene M. Ramos for Plaintiff and Appellant.

Ballard Rosenberg Golper & Savitt, Linda Miller Savitt, Christine T. Hoeffner and Stephanie Kantor for Defendant and Respondent.

\* \* \* \* \* \*

Plaintiff Byron Kirkwood appeals the trial court's grant of summary judgment on his California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) and related claims following the termination of his employment with defendant Saks Fifth Avenue, Inc. (Saks).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The general facts are undisputed.  From March 20, 2006, until his termination on January 24, 2011, Kirkwood, an African-American man, worked in the high-priced fine jewelry department at the Saks store in Beverly Hills.  As he acknowledges, during his tenure he incurred a long list of disciplinary write-ups and policy violations, as well as six performance memoranda.  His discipline involved tardiness, customer complaints, and merchandise handling procedures meant to protect against theft.

The most recent violations that preceded his termination involved a new sales tax policy announced by Saks on January 21, 2010, in a memorandum distributed to all employees, including Kirkwood.  Effective January 31, 2010, the new policy required sales tax to be charged on all sales of merchandise to be sent out-of-state based on the tax laws of those states, so long as Saks had a presence there.  The memorandum informed associates, "You may not override that sales tax as it is being assessed in compliance with appropriate tax laws," and, "Implementation of this procedure requires your good judgment, attentiveness, discretion and, when appropriate, partnership with management.  [¶]  Failure to comply with either the letter or the spirit of this policy may result in disciplinary actions, up to and including termination."  (Italics omitted.)  The "FAQs" section further stated:  "Q.  My customer has asked that I make an exception and waive the sales tax charged on this send.  Can I accommodate her request?  [¶]  A.  No.  Sales tax is being assessed based on the change in our corporate structure and/or the change in state tax laws that require Saks Fifth Avenue to collect the tax.  Tax evasion is a serious crime, and we can not take any action that permits tax evasion."  An October 23, 2010 e-mail to all employees in the Beverly Hills store, including Kirkwood, reiterated the policy regarding gift purchases, noting, "In regards to gifts, there is no sales tax charged but all 'sends' must be sent to a

different name and address from the purchaser. Purchases being sent to second homes or to anyone at any of the client's addresses or place of business cannot be sent as a 'gift'."

Kirkwood handled three purchases for the same client on February 13, March 6, and November 10, 2010. It is undisputed the client was not charged sales tax for the first two purchases. For those transactions (involving jewelry costing approximately $100,000 and $4,000 respectively), the receipts contained the phrase "Tax Exempt ID G," reflecting a "tax exempt" register key was used, thereby circumventing the charging of sales tax. Kirkwood believed the purchases were tax-free, out-of-state gifts.

For the third purchase, Kirkwood sent an e-mail to the client on November 10, 2010, calculating the cost of the merchandise (again approximately $100,000). He did not include sales tax in those calculations. Upon reviewing this e-mail, Kirkwood's manager Chandler Rashley e-mailed Kirkwood: "I want to be very clear with you on this: the client must pay tax on this sale." Rashley e-mailed him a second time two days later congratulating him after the client had put down a deposit. She repeated, "I wanted to make sure you had a discussion with her regarding the tax." Kirkwood did not respond to the e-mails, but Rashley spoke to him directly about charging sales tax, and he said the client "knows she's paying sales tax." When the merchandise arrived at the store, Rashley processed the order, charging the client the balance of the price plus sales tax. On January 12, 2011, the client told Rashley she did not think she would be charged sales tax and she had not paid sales tax on her previous two purchases. The client ultimately canceled the order.

Saks commenced an investigation and determined that Kirkwood had in fact failed to charge sales tax for the client's prior purchases, even though the transactions occurred after the new tax policy was announced and put into effect. The first purchase was a gift to the client from her husband, which did not qualify as a bona fide gift under the new policy. The second purchase was a bona fide gift not subject to

sales tax. But both purchases were improperly rung up as "tax exempt" because the client did not have tax exempt status.

Saks terminated Kirkwood's employment on January 24, 2011. In his termination letter, Saks cited his disregard of Rashley's two e-mails and misrepresentations to the client she would not have to pay sales tax for the November 2010 purchase; his improper use of the tax exempt key to circumvent charging sales tax for the two prior purchases; and his six documented policy violations between April 6, 2007, and January 4, 2010.

The incident that generated this lawsuit occurred in December 2010, a month before Kirkwood was terminated. Around December 16, 2010, an employee complained that Kirkwood had made an inappropriate comment about her to a male client. Saks talent development director Philip Giovanelli interviewed both Kirkwood and the employee. There were no other employee witnesses. The investigation was inconclusive, so Giovanelli did not discipline Kirkwood in any way.

On December 22, 2010, Kirkwood delivered a written memorandum to Saks about this incident and the investigation. Among other points, he complained he was "disturbed by how this has been handled and felt discriminated against." He felt the other employee was "prejudiced" against him and the company had not conducted "any objective, unbiased investigation into this accusation." He stated, "My feeling is that if my position is in jeopardy over a remark I did not make—and have repeatedly said I did not make—and there is no unbiased attempt whatsoever to investigate the allegations, it can only be the result of racial discrimination based on some biased perceptions that have nothing to do with me, but everything to do with assumptions that others have made." Giovanelli and Rashley met with Kirkwood after reviewing

4

the memorandum, but Kirkwood did not provide any further information. No further action was taken.[1]

Kirkwood filed a complaint on February 5, 2013, against Saks, Giovanelli, and Rashley, alleging five claims stemming from his termination: (1) wrongful termination in violation of public policy; (2) retaliation (Gov. Code, § 12940, subd. (h)); (3) race discrimination (Gov. Code, § 12940, subd. (a)); (4) harassment (Gov. Code, § 12940, subd. (j)); and (5) failure to prevent harassment (Gov. Code, § 12940, subd. (k)). Saks moved for summary judgment or summary adjudication on all claims, which the court granted.[2] The court concluded the wrongful termination in violation of public policy claim was time-barred (which Kirkwood did not dispute); Kirkwood had put forward a prima facie case of retaliation and discrimination, but Saks submitted evidence of legitimate, nonretaliatory reasons for his termination, and Kirkwood failed to raise a triable issue that those reasons were pretextual; Kirkwood was not subjected to actionable harassment; and Kirkwood's claims for failure to prevent discrimination and harassment and punitive damages failed because his other claims failed. The court entered judgment and Kirkwood appealed.

## DISCUSSION

### 1. *Legal Standards*

We review the grant of summary judgment de novo, considering all the evidence set forth in the moving and opposition papers except evidence for which objections were made and sustained. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment must be granted if "all the papers submitted show that

---

[1] About a year earlier on November 27, 2009, Kirkwood submitted a rebuttal to a disciplinary write-up, claiming he felt "singled out," but he did not mention race or any other protected characteristic.

[2] The trial court noted that Kirkwood had filed his opposition papers late, and Kirkwood's counsel "reflected a pattern in this case of filing and serving untimely papers." Nonetheless, the court accepted the late filing and addressed the merits.

there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, we must decide whether the defendant has conclusively negated a necessary element of the plaintiff's claim or has established an affirmative defense and has demonstrated no material issue of fact requires a determination at trial. (Code Civ. Proc., § 437c, subd. (*o*); *Guz, supra*, at p. 334.) We review the trial court's evidentiary rulings for abuse of discretion. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852 (*Serri*).) On appeal, Kirkwood challenges only the grant of summary adjudication of his retaliation claim, so we treat the rest of his claims as abandoned. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177 ["[F]ailure to address summary adjudication of a claim on appeal constitutes abandonment of that claim."].)

Government Code section 12940, subdivision (h) of FEHA "makes it an unlawful employment practice '[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.'" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*), italics omitted.) At trial, the plaintiff bears the burden to demonstrate a prima facie claim of retaliation, that is, proof that "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ""'drops out of the picture,"'" and the burden shifts back to the employee to prove intentional retaliation." (*Ibid*.) To do so, the plaintiff may demonstrate the reasons proffered by the employer are "'untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude

that the employer engaged in intentional discrimination or other unlawful action.'" (*Serri, supra*, 226 Cal.App.4th at p. 861.)

We will assume for the sake of our decision here that Kirkwood offered sufficient evidence of a prima facie case of retaliation based on his December 22, 2010, memorandum complaining about race discrimination, and his termination, which occurred one month later. (See, e.g., *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615 ["The retaliatory motive is 'proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter.'"].) Further, there is little question—and Kirkwood concedes on appeal—that Saks offered facially legitimate reasons for his termination unrelated to his December 2010 discrimination complaint, namely, his disregard of Rashley's two e-mails and misrepresenting to the client she would not have to pay sales tax for the November 2010 purchase, improperly assigning tax exempt status to the client for her two prior purchases, and his long history of policy violations and discipline.

Thus, the crux of this case is whether Kirkwood has raised a triable issue of material fact that Saks's reasons were pretext for intentional retaliation. In showing pretext, "[i]t is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive. [Citations.] Rather it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer." (*Serri, supra,* 226 Cal.App.4th at p. 862.) Nor is it enough for the employee "simply to raise triable issues of fact concerning whether the employer's reasons for taking the adverse action were sound. . . . [¶] . . . 'Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [the [*sic*] asserted] non-discriminatory reasons.""'"

(*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005 (*Hersant*).)  Further, although "[p]roof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination [or retaliation]," "there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions."  (*Guz, supra*, 24 Cal.4th at p. 361; see *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1531-1532 ["Logically, disbelief of an Employer's stated reason for a termination gives rise to a compelling inference that the Employer had a different, unstated motivation, but it does not, without more, reasonably give rise to an inference that the motivation was a prohibited one."].)

### 2.  Evidence of Pretext

On appeal, Kirkwood claims he established pretext by undermining the veracity of Saks's reasons for his termination and by citing evidence he asserts establishes retaliatory animus.  As we will explain, he has failed to substantiate these contentions and therefore failed to raise a triable issue that Saks terminated him in retaliation for his discrimination complaint.

Kirkwood first attacks his alleged improper use of the tax exempt key for the February and March 2010 sales.  The undisputed evidence shows (1) no sales tax was charged for either of those transactions, (2) the tax exempt key was used to circumvent the charging of sales tax, (3) the use of the tax exempt key was improper because the client lacked tax exempt status, and (4) Kirkwood was the one who used the tax exempt key for the transactions to avoid charging sales tax.[3]  Kirkwood raises various

---

[3]  The court overruled Kirkwood's foundation, personal knowledge, and conclusory objections to Giovanelli's statements in his declaration that his "investigation uncovered two purchases (on February 13, 2010 and March 6, 2010) processed and completed by Kirkwood where he did not charge the client sales tax" and "[t]o circumvent Saks' register from automatically charging sales tax to these purchases, Kirkwood utilized the 'tax exempt' register key."  Kirkwood purports to challenge those rulings on appeal, but he has given no reason why the court abused its

8

contentions in an attempt to undermine Saks's showing, but none of his arguments rebuts the basic undisputed fact that he improperly used the tax exempt key for these sales.

First, he suggests he could not have evaded charging sales tax because the policy announcement explained sales tax would be "automatically applied" to all out-of-state "sends" and sales associates "may not override that sales tax as it is being assessed in compliance with appropriate tax laws." But simply because employees *may* not override the sales tax does not mean they *could* not override it, and, as the uncontroverted receipts for those transactions demonstrate, it was in fact overridden for the February and March 2010 transactions. Kirkwood himself admits no tax was charged on those transactions (albeit because he believed they were tax-free gifts), so his interpretation of the tax policy is unsupported by the record.

Kirkwood also implies he was not responsible for improperly using the tax exempt key because the tax policy was subject to employee "leeway" and he partnered with a coworker and spoke with a store manager about the February 2010 transaction. Similarly, in his reply brief he suggests he got instructions from "Camille" in Saks's customer service department in order to ring up the February 2010 purchase as a gift. Although his briefs are not entirely clear, he seems to suggest this evidence shows he was only acting on instructions to ring the sale up using the tax exempt key. Yet, he has offered no evidence—including in his own declaration in opposition to summary judgment—that "Camille" or anyone else directly instructed him to use the tax exempt key to circumvent sales tax for an out-of-state gift purchase. Nor is there any support for his claim that employees had "leeway" to use the tax exempt key when a client is not properly tax exempt.

discretion. We therefore reject his contentions. (See *Serri, supra*, 226 Cal.App.4th at p. 852 [challenger bears burden to show trial court's adverse evidentiary rulings were abuse of discretion].)

9

In the termination letter, Saks also cited Kirkwood's failure to obey Rashley's directives to charge sales tax on the November 2010 sale and to inform the client she would have to pay sales tax.[4] To raise a dispute of fact on this point, Kirkwood raises a conflict between Rashley's testimony and a declaration from the client over the content of their conversation about the sales tax issue for the November 2010 purchase. According to Rashley, when she contacted the client, the client told her Kirkwood represented that she would not have to pay sales tax. In her declaration, the client claimed she told Rashley that Kirkwood "never misrepresented to [her] that [she] would not be paying sales tax on the watch purchase nor did he ever say to [her] that the sales tax would not be charged on the watch order." Kirkwood suggests Rashley was lying in order to cover up her true retaliatory motive, which created a dispute of fact requiring trial.

While we agree this is a dispute of fact, it is not *material*, so it cannot preclude summary judgment. Crediting the client's testimony as we must, it still does not show Kirkwood complied with Rashley's directive to affirmatively inform the client she *would have to pay* sales tax. If he had done so, the client could have easily said as much in her declaration, instead of asserting the double negative that he did not tell her she would not have to pay sales tax. Kirkwood's testimony is similar: In his supplemental declaration, he stated only that he "never told Chandler Rashley that I informed [the client] that they did not have to worry about not paying the sales tax on any merchandise that was purchased during the year 2010 or 2011"; and at his deposition, he testified that he "discussed all the possibilities of this transaction with the client, tax, sales tax, and it being a gift," but he did not testify he told her she

---

[4]    Kirkwood views this reason as "insubordination," and he argues Saks waited until summary judgment to claim he was terminated for insubordination, suggesting it was a post hoc reason demonstrating pretext. While his termination letter did not use the word "insubordination," it cited his failure to follow Rashley's directives on the sales tax policy. Under any rational interpretation, Kirkwood's alleged conduct qualified as insubordination, so the fact that Saks did not use that word until later in litigation cannot defeat summary judgment.

would have to pay sales tax, as Rashley directed.  In fact, it is clear Kirkwood did *not* comply with Rashley's directives, given the client admitted she thought her purchase was a gift "so [she] did not think that tax would be charged on the purchase."  On this record, the only rational inference is that he disobeyed Rashley's directive, which cannot support a claim of pretext.[5]

Next, Kirkwood claims he performed his job satisfactorily in his last year of employment, which undermines the justification for his termination in January 2011. While the termination letter identified his last documented discipline as occurring a year earlier on January 4, 2010, the letter describes his improper use of the tax exempt key for the February and March 2010 sales and his disregard for Rashley's instructions to charge sales tax for the November 2010 sale and to ensure the client understood she had to pay sales tax.  Thus, although Saks did not *discover* his sales tax policy violations until January 2011, the evidence demonstrates he did not perform satisfactorily in his last year of employment.

In direct tension with this argument, Kirkwood also attempts to undercut the veracity of the termination letter by pointing out that he *did* receive a documented "first warning" on August 11, 2010, for falsifying documents, which was not listed in his termination letter.  Likewise, he received a "first warning" four days earlier for excessive tardiness, which also was not cited in the letter.  No reasonable factfinder could infer a retaliatory motive based on Saks's failure to include *additional* discipline in his termination letter.  Giovanelli himself testified that if this discipline had been "significant enough," he would have asked that it be included in the letter.  Given the serious matters outlined in the letter more than justified Kirkwood's termination, Saks's failure to list *less* serious discipline does not demonstrate pretext for retaliation.

---

[5]    The only evidence Kirkwood cites to suggest he told the client she would have to pay sales tax is Rashley's deposition testimony that Kirkwood told her the client "knows she's paying sales tax."  But this statement was demonstrably false, given the client herself stated she did not think she had to pay sales tax.  Thus, this testimony only strengthens Saks's case for Kirkwood's termination.

Kirkwood further points out he was not issued a first (or any) warning for the sales tax violations before he was terminated, whereas he was issued a first warning on August 11, 2010, for falsifying documents, and in prior discipline he had been given an opportunity to improve, suggesting Saks skipped any progressive discipline in order to retaliate for his discrimination complaint one month prior. But Saks warned employees that violations of the tax policy "may result in disciplinary actions, up to and including termination." Had Saks discovered his first policy violation more contemporaneously with the February 2010 sale, it might have decided a more progressive course of discipline was appropriate. But by the time Kirkwood's violations were discovered in January 2011, his actions reflected a pattern of serious misconduct coupled with his long history of policy violations and discipline. The mere fact that Saks did not progressively discipline him before terminating his employment does not give rise to a rational inference of pretext.

Kirkwood identifies several additional facts he claims give rise to an inference of retaliatory animus. He points out Giovanelli admitted he found it "hard to believe" Kirkwood's version of events of the December 2010 complaint against him. But Giovanelli said this *before* Kirkwood presented his memorandum raising the issue of race discrimination, so Giovanelli's comment could not have been the product of retaliatory animus based on Kirkwood's *later* complaint. Nor does Kirkwood dispute he was never disciplined for this incident.

Next, Kirkwood claims Rashley accused him of lying regarding the sales tax issue with the client and falsifying documents related to his August 11, 2010 discipline. Yet, his discipline for falsifying of documents occurred months before his December 2010 complaint, so it could not demonstrate retaliation for his *later* complaint, regardless of how Rashley treated him during the situation. Similarly, as we have explained, although Rashley and the client gave conflicting accounts of what Kirkwood told the client about the sale tax for the November 2010 sale, there is no dispute he failed to tell the client she had to pay sales tax. That Rashley accused Kirkwood of lying does not show retaliatory animus.

12

Kirkwood further points out that Rashley once told him about how her personal life was impacted by having an African-American stepfather, which he implies is direct evidence of retaliatory animus. We fail to see how this discussion could have any bearing on whether Rashley intended to retaliate against him for lodging a complaint about race discrimination.

Kirkwood next contends Saks made the "sudden decision" to strictly enforce the sales tax policy only after he lodged his discrimination complaint, demonstrating retaliatory animus. This contention is flawed in at least two respects. First, he offered no evidence that other employees violated this policy but were not disciplined. Second, there is no evidence Saks's enforcement of the policy was in any way "sudden": Kirkwood was disciplined a year after the policy went into effect, during which time Saks not only reminded employees—including Kirkwood—of the policy via e-mail in October 2010, but Rashley also personally directed Kirkwood twice to be sure the client knew she had to pay sales tax on the November 2010 purchase, which he failed to do. Rashley also testified she talked about it at least five times at staff meetings in 2010.

Kirkwood also claims Rashley and Giovanelli began a "campaign of disciplining" him following a November 27, 2009 written memorandum he submitted in response to discipline, in which he stated he felt "singled out." (Capitalization and boldface omitted.) He contends Rashley and Giovanelli thereafter "la[id] down a paper trail leading up to [his] termination," which is evidence of retaliatory animus. This contention is meritless. Nothing in his November 27, 2009 memorandum mentions race or discrimination, and Rashley and Giovanelli could not have begun laying down a "paper trail" to cover up their retaliatory motives when Kirkwood did not even complain about discrimination until over a year later. In any case, Kirkwood incurred discipline both before and after his November 27, 2009 memorandum, undercutting any inference that Rashley and Giovanelli embarked on a campaign to discipline him more severely in retaliation for his November 27, 2009 memorandum.

13

Finally, Kirkwood identifies several additional alleged flaws in Saks's investigation of the sales tax issue and the incident with his coworker as proof of retaliatory animus. He claims Giovanelli failed to investigate why the tax exempt key was used for the February and March 2010 purchases. In his deposition, Giovanelli conceded he did not know specifically what the phrase "Tax Exempt ID G" meant on the receipts for the February and March 2010 purchases, nor did he personally look into the issue or ask Kirkwood about it. But Rashley investigated the use of the tax exempt key and asked the client if she had a tax exempt identification number. The client did not.**6** Rashley informed Giovanelli, and Giovanelli found no reason to ask Kirkwood *why* he improperly used the tax exempt key. Given Kirkwood's clear violation of policy, Giovanelli reasonably concluded Kirkwood's reasons for using the tax exempt key were irrelevant.

Kirkwood also claims Rashley reached a "quick" conclusion about his sales tax policy violations because she investigated the issue only 12 days before he was terminated. Even if his characterization were accurate, he points to no favorable facts Rashley would have uncovered if she had conducted a longer investigation.

Kirkwood also believed he was ignored and treated unfairly with regard to the complaint by his coworker because Rashley immediately assumed he provoked the incident and asked if he had apologized, and Giovanelli did not believe his version of events. But as we noted above, the incident was investigated and the results were inconclusive, so Kirkwood was not disciplined. His speculation about Rashley's and

---

**6** Kirkwood attacks Rashley's veracity on this point by citing a memorandum Rashley drafted following her discussion with the client. In it, Rashley noted she explained the client's past purchases had a "tax exempt key" applied without a tax identification number, and she "paused . . . to wait for her to offer a tax id # which she did not." The trial court sustained Kirkwood's objection to this memorandum, so we cannot consider it. Even if we could, this discrepancy between Rashley's memorandum and her deposition testimony does not change the undisputed fact that the client did not have a tax identification number and the use of the tax exempt key was improper.

14

Giovanelli's personal feelings toward him based on this incident cannot defeat summary judgment.

In sum, Saks presented significant evidence that Kirkwood had a long and continuing history of discipline, culminating in improperly using the tax exempt key for the February and March 2010 sales and disobeying Rashley's directives to inform the client she had to pay sales tax on the November 2010 sale. Kirkwood has not put forward evidence enabling a reasonable factfinder to find these reasons for his termination consisted of such "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions'" that they were unworthy of credence. (*Hersant, supra*, 57 Cal.App.4th at p. 1005.) Nor has he offered any evidence that would allow the trier of fact to infer Saks's true motivation was retaliation for his discrimination complaint. (*Guz, supra*, 24 Cal.4th at p. 361.)

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.



FLIER, J.

WE CONCUR:



BIGELOW, P. J.



RUBIN, J.

15