Filed 4/29/22  Yates v. Cal. State University of the East Bay CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DORIS YATES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA STATE UNIVERSITY OF THE EAST BAY,<br><br>    Defendant and Respondent. | A162131<br><br>(Alameda County<br>Super. Ct. No. HG19029448) |

Plaintiff Doris Yates brought this action against her employer, defendant California State University of the East Bay, for alleged violations of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.[1]) related to third party harassment by a student.  The operative complaint alleges that defendant failed to take all reasonably necessary steps to prevent and address the student's harassment and that defendant unlawfully retaliated against plaintiff for asserting her rights under FEHA.  We conclude the trial court properly sustained defendant's demurrer without leave to amend, and we affirm the judgment of dismissal.

---

[1]    All further unlabeled statutory references are to this code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, which we assume are true for purposes of demurrer, are taken from the allegations of the third amended complaint and from materials that were judicially noticed by the trial court.

At all relevant times, plaintiff was a tenured professor employed by defendant. P.W. was a student enrolled in a class taught by plaintiff from September to December of 2014 and at that time began to stalk her. The harassment continued through 2019, though P.W. "is no longer a student" at defendant's campus.[2] After plaintiff complained to defendant about P.W.'s "unwelcome sexual behavior and hostile stalking behavior", defendant conducted an investigation.

Defendant's investigation culminated in a written report dated April 14, 2015. The report found that: (1) P.W. admitted she sent plaintiff an email on December 3, 2014 and acknowledged having personal feelings for plaintiff; (2) P.W. admitted she brought a card to plaintiff's office; (3) it is probable that P.W. called plaintiff on two occasions and also sent plaintiff a Facebook friend request on December 12, 2014; (4) P.W. sent plaintiff a LinkedIn network request on December 8, 2014; (5) P.W. likely made random calls and left voice messages for plaintiff at the beginning of the quarter; (6) P.W. admitted she came to plaintiff's office on February 5, 2015 to apologize; and (7) P.W. attempted to contact plaintiff by email on February 28, 2015.

Based on these findings, the April 14, 2015 report determined that plaintiff's claims of sexual harassment were substantiated and that P.W.'s conduct was " 'sufficiently severe or pervasive' " and " 'intimidating, hostile and offensive' " that it violated defendant's policy against sexual harassment

---

[2]     The complaint alleges P.W. continued as a student until 2019.

(Executive Order 1096). Despite its report findings, defendant allowed P.W. to remain enrolled as a student, though it sanctioned P.W. "not to have any contact with [plaintiff] whatsoever." Thereafter P.W. continued her harassing conduct, and defendant knew of this but allegedly failed to take all reasonable steps necessary to prevent it and protect plaintiff from it.

In November 2015, plaintiff sought a civil harassment restraining order against P.W. from the Alameda County Superior Court. In requesting the restraining order, plaintiff submitted a declaration attesting that P.W. harassed her by: sending her inappropriate e-mails though defendant's e-mail system on December 3 and 11, 2014; attempting to contact her via social media and stopping by plaintiff's work office; and sending a certified document to plaintiff's home on October 17, 2015. Plaintiff also referred to defendant's finding that P.W. had violated Executive Order 1096; defendant's sanction of P.W.; and P.W.'s violation of the sanction on "February 5 and 28, April 28, October 17, 2015." On December 17, 2015, the trial court issued a restraining order, directing P.W. to stay at least 100 yards away from plaintiff, her home, and her vehicle. The restraining order was set to expire on December 17, 2018.

In December 2018, plaintiff filed a request to renew the restraining order on the basis that P.W.'s behavior "was continuing and ongoing." In support of her request, plaintiff submitted a declaration stating that "[s]ince the issuance of the original Restraining Order, [plaintiff has] been forced to have continued contacts with [P.W.], through [plaintiff's] Lawyer, as [P.W.] exhausted, unsuccessfully, all appeals." Plaintiff referenced two additional incidents in 2018—one in March and one in November—in which P.W. attempted contact with plaintiff through plaintiff's attorney.

3

Meanwhile, on August 21, 2018, plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing (DFEH) alleging defendant's violation of FEHA. After receiving a right to sue letter from DFEH, plaintiff filed the underlying action for violation of FEHA. This initial complaint alleged that a former student of plaintiff's at CSU East Bay stalked plaintiff from December 2014 through November 2018; that plaintiff reported the problem to defendant; that defendant failed to take all reasonable steps to ensure a safe workplace free from sexual harassment; and that defendant's inaction forced plaintiff to seek a civil anti-harassment restraining order against the student. When defendant objected to the initial complaint as vague and uncertain, plaintiff voluntarily agreed to amend. Thereafter defendant objected to the sufficiency of the first amended complaint to state a cause of action, and plaintiff obtained leave of court to file a second amended complaint that included a second cause of action for retaliation in violation of FEHA.

Defendant then demurred to the second amended complaint. Defendant also filed a request for judicial notice of plaintiff's filings in support of the restraining orders she obtained against P.W. The judicial notice request was granted without opposition.

The trial court found the second amended complaint deficient and sustained the demurrer with leave to amend. It determined the first cause of action was inadequately pleaded because it alleged only "that the stalking began 'in December 2014' and 'continued into November of 2018,' " without "adequately alleg[ing] the specific nature of the conduct that plaintiff contends amounts to 'severe and pervasive' harassment." In granting leave to amend, the court ordered plaintiff to amend this claim "with specificity by stating the specific conduct that supports her claim of severe and pervasive

4

'stalking,' including precisely when it occurred, how often it occurred, and where each such act occurred."

The trial court then found the second cause of action for retaliation in violation of FEHA deficient because it failed to identify and allege a material adverse employment action. Although plaintiff had alleged a senior employee of defendant directed her to resign or step down from an administrative committee, the court found no allegation that plaintiff actually resigned or was otherwise removed from the committee.

Thereafter plaintiff filed a third amended complaint (hereafter, the complaint), which is the operative pleading at issue. The complaint alleges that for several years, both before and after the restraining order was issued, P.W. engaged in sexual harassment and stalking behavior by making unwelcome sexual statements about plaintiff; sending unwanted communications referencing plaintiff; and attempting to contact plaintiff through social media.

After unsuccessful meet and confer efforts, defendant demurred to the complaint on the grounds that it failed to allege sufficient facts to constitute a cause of action against defendant and that plaintiff failed to cure the pleading deficiencies previously identified by the trial court. The trial court ultimately sustained the demurrer without leave to amend, finding the complaint failed to comply with its previous ruling "requiring that plaintiff plead with particularity the facts supporting her claims sufficient to overcome the deficiencies of the Second Amended Complaint identified in the 06/28/2020 ruling." The court ordered dismissal of the entire complaint and entered a judgment accordingly.

5

## DISCUSSION

The standard for reviewing an order sustaining a demurrer is settled. " '[W]e examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' " (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050.)  We assume the truth of all properly pleaded material facts, but not contentions or conclusions of law.  (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.)  We also consider matters that have been judicially noticed.  (*Ibid.*)  The complaint must be read as a whole and given a reasonable interpretation.  (*Ibid.*)  When a demurrer is sustained without leave to amend, "we consider whether there is a 'reasonable possibility' that the defect in the complaint could be cured by amendment."  (*King*, at p. 1050.)  It is the plaintiff's burden to prove that amendment could cure the defect.  (*Ibid.*)

### A. First Cause of Action:  Violation of FEHA (Hostile Work Environment)

FEHA prohibits workplace harassment based on sex.  (§ 12940, subd. (j)(1).)  "Hostile work environment sexual harassment occurs when unwelcome comments or conduct based on sex unreasonably interfere with an employee's work performance or create an intimidating, hostile, or offensive work environment."  (Cal. Code Regs., tit. 2, § 11034, subd. (f)(2).)  Where, as here, the harassment is committed against an employee by a nonemployee, the employer may be liable when "it knows or should have known of the conduct and fails to take immediate and appropriate corrective action." (§ 12940, subd. (j)(1); Cal. Code Regs., tit. 2, § 11034, subd. (f)(2)(C)(3).)  In such situations, courts consider "the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those nonemployees."  (§ 12940, subd. (j)(1).)  The employer "shall take all responsible steps to prevent harassment from occurring."  (*Ibid.*)

6

Two decisions—*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590 (*Fisher*) and *Bradley v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1612 (*Bradley*)—are instructive in assessing the sufficiency of plaintiff's allegations.  Although these cases concerned harassment by a defendant's employee (and not by a nonemployee as in this case), *Fisher* addressed the necessity for specific pleading in hostile work environment cases, while *Bradley* discussed the obligation of an employer to take sufficient corrective action after a sexual harassment report.

In *Fisher*, the court held that a prima facie claim of work environment sexual harassment includes the element that "the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." (*Fisher*, *supra*, 214 Cal.App.3d at p. 608.)  There, a nurse had brought a FEHA claim predicated on allegations that a doctor employed by the defendant "created a hostile work environment for [the plaintiff] by his sexual harassment of other women employees in her presence," which included his unwelcome grabbing and kissing of other nurses and making offensive sexual comments and gestures.  (*Fisher*, at p. 612.)  Although the complaint described "in general terms what acts occurred and where they occurred," the *Fisher* court found the complaint "deficient as there [was] no indication of the frequency or intensity with which these acts occurred." (*Id*. at p. 613.)  Specifically, the court asked, "Did each alleged act occur once in four years or did the acts occur on a daily or weekly basis?  Which acts occurred with any frequency—the remarks or the offensive touchings?  What acts occurred within the FEHA's one-year statute of limitations (§ 12960)?" (*Ibid*.)  While acknowledging that "acts beyond the statute of limitations might be relevant to showing a pattern of continuous harassment," the *Fisher* court concluded that a claim for environmental

sexual harassment would not be viable where "only a couple of acts occurred during the one year preceding the filing of the complaint." (*Ibid*.)

In *Bradley*, the appellate court explained that "[o]nce an employer is informed of the sexual harassment, the employer must take adequate remedial measures." (*Bradley*, *supra*, 158 Cal.App.4th at p. 1630.) The measures must be "reasonably calculated" to end the current harassment and deter future harassment, and the " 'reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment.' " (*Ibid*.) If the conduct of a harassing coworker occurs off of the work premises where the employer has no control over the harasser, it is not liable for the harasser's action. (See *id*. at p. 1631.) Though *Bradley* agreed with the employer that "the 'most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified,' " the court cautioned that initiating an investigation "cannot be the only step taken." (*Ibid*.) Thus, while the defendant employer undertook an investigation and interviewed many individuals, *Bradley* upheld the jury's finding that its corrective action was insufficient because there was "no followup, no evaluation of the need for protection, and no further investigation." (*Ibid*.) As *Bradley* recounted, the "sum total" of the employer's response "was to refer [plaintiff Bradley's] complaint to a bogged-down investigative process and to caution Bradley to protect herself." (*Id*. at p. 1634.) The employer also failed to advise Bradley about what was happening to her complaint and did not respond to Bradley's request for help in serving a restraining order on the harasser even though the employer had recommended the order. (*Ibid*.)

8

We now turn to the complaint and consider whether the first cause of action contains the detail necessary to show that P.W.'s alleged harassment was sufficiently pervasive such that it altered the conditions of employment and created an abusive working environment (*Fisher*, *supra*, 214 Cal.App.3d at p. 608) and that defendant failed to take reasonable measures that could have stopped the harassment (*Bradley*, *supra*, 158 Cal.App.4th at p. 1630).

The first cause of action lists various examples of P.W.'s alleged stalking behaviors, as follows.

Paragraph IV of the first cause of action summarily alleges that defendant's written report dated April 14, 2015, details "some of the stalking behaviors." While not attached to the complaint, a portion of this report is quoted at length in paragraph XIX of the complaint's general allegations and is included in full in the materials that the trial court judicially noticed. The report states that defendant investigated plaintiff's claims of sexual harassment by P.W., including incidents of harassment occurring in December 2014 through February 2015, and determined the conduct violated defendant's Executive Order 1096, while paragraph IV of the first cause of action alleges that defendant's "investigation confirmed the sexual harassment and severe and pervasive conduct" as described in the report.

Paragraph V identifies 16 examples of unwelcome sexual statements made by P.W. In all but one instance, the complaint fails to indicate when and how the identified statements were made or how and where they were conveyed to plaintiff. That is, there is no indication whether a particular statement was made in person and on campus, or by letter or email, or by some other means. The one partial exception is the allegation stating: "Writing in a December 6, 2018 document stating 'Doris (Yates) would become the love of my life.' "

Paragraph VI alleges P.W. sent unwanted email communications to plaintiff, including eight communications on certain identified dates in November and December 2014, one on February 28, 2015, and one on December 12, 2015. This paragraph simply lists the dates on which emails were allegedly sent but fails to identify the content of any particular email. Paragraph VI also contains an allegation that "[e]mails continued to be sent in 2016, 2017, and 2018," with no further specificity.

Paragraph VII alleges approximately 20 other examples of P.W.'s stalking behaviors. Ten of the examples are undated, and three explicitly pertain to conduct predating defendant's April 14, 2015 report. Another instance allegedly occurred on April 28, 2015, and a total of three others allegedly occurred in May and November 2016. The following alleged communications occurred in 2018 and 2019: (1) P.W. sent "an email on or about 3/6/2018 about '. . . showing up on school grounds with a weapon to harm others' "; (2) P.W. stated "on or about 3/6/2018 that '. . . I don't want some one like [plaintiff] to push me to the brink of committing such an act' "; (3) P.W. sent "12/2019 a *LinkedIn* Request directed toward [plaintiff] in violation of the Restraining Order"; (4) P.W. looked "for [plaintiff] at a Campus event on 10/19/2018"; and (5) P.W. "12/30/18 sent a Google hangout letter to [plaintiff]".

Paragraph VIII alleges in full: "During this general timeframe Plaintiff began to receive a high volume of hang-up phone calls at her residence. This had not happened in the past."

Are these allegations sufficiently specific to state a hostile work environment cause of action in violation of FEHA? As *Fisher* explained, a complaint is deficient where it fails to allege facts showing severe and pervasive harassment occurring within FEHA's one-year statute of

10

limitations. (*Fisher*, *supra*, 214 Cal.App.3d at p. 613.) Here, plaintiff filed a DFEH complaint against defendant on August 22, 2018, so we look to whether the complaint alleges facts showing that severe and pervasive harassment occurred on or after August 22, 2017 (*ibid*.) and whether those acts occurred in the workplace or under circumstances in which defendant maintained control or was reasonably positioned to stop the acts (see *Bradley*, *supra*, 158 Cal.App.4th at pp. 1630–1631).

As recounted above, paragraphs IV and VI of the first cause of action only cite specific examples of P.W.'s alleged harassing behavior that occurred before August 22, 2017. Although paragraph V quotes 16 sexual comments allegedly made by P.W., 15 of them are listed without any details as to when or where or how the particular statements were made. However, it appears from judicially noticed documents that the 15 quoted comments were contained in emails predating 2015.[3] Finally, paragraph VII lists 20 examples of P.W.'s alleged stalking behavior, but 15 of the 20 examples either have no dates associated with them or are alleged to have occurred before August 22, 2017.

Thus, only six out of all the communications and incidents identified in the first cause of action—i.e., one cited in paragraph V and five cited in paragraph VII—allege events occurring within the one-year limitations period and are potentially actionable. (*Fisher*, *supra*, 214 Cal.App.3d at

---

[3]     The judicially noticed documents included plaintiff's "Request for Civil Harassment Restraining Orders against [P.W.]," which had been filed in Alameda County Superior Court. One of the attachments to that request was a printout of a single email—written by P.W. and sent to plaintiff on December 3, 2014—which included 14 of the quoted comments in paragraph V. Another attachment to the same request was a printout of an email from P.W. to plaintiff dated December 9, 2014, which contained the fifteenth quoted comment in paragraph V.

11

p. 613.) Those six alleged incidents consist of: P.W. sending an email on or about March 6, 2018; P.W. making a statement on or about March 6, 2018 referencing plaintiff; P.W. looking for plaintiff at a campus event on October 19, 2018; P.W. writing in a December 6, 2018 document about plaintiff; P.W. sending a Google hangout letter to plaintiff on December 30, 2018, and P.W. sending a LinkedIn request to plaintiff in December 2019.

Apart from the one allegation stating that P.W. looked for plaintiff at a campus event in October 2018, the complaint fails to specify whether any of these communications and incidents directly involved plaintiff or whether they occurred on defendant's campus or under circumstances within defendant's control. Notably, two of the five communications allegedly occurred over online platforms hosted by LinkedIn and Google. Moreover, the allegations concerning the other three 2018 statements or emails are bereft of any facts indicating they were made or sent directly to plaintiff. To the contrary, judicially noticed documents indicate such statements and emails were sent only to plaintiff's attorney.[4]

Considering the totality of the circumstances, we cannot conclude these incidents, as alleged, amounted to harassment that was sufficiently severe and pervasive to have transformed defendant's campus into an abusive working environment for plaintiff. (*Fisher, supra*, 214 Cal.App.3d at p. 608.) Indeed, even assuming the off-campus communications to plaintiff's lawyer might qualify as harassing conduct that was directed toward plaintiff, the

---

[4]     Specifically, as part of her December 2018 application to renew the restraining order against P.W., plaintiff declared under penalty of perjury that "[s]ince the issuance of the original Restraining Order I have been forced to have continued contact with [P.W.], through my Lawyer, as [P.W.] exhausted, unsuccessfully, all appeals." Notably, there was no mention in plaintiff's declaration that P.W. confronted plaintiff directly.

12

complaint pleads no facts that, if proven, would demonstrate defendant's ability to have prevented these or any of the other incidents allegedly occurring within the one-year limitations period. (*Bradley, supra,* 158 Cal.App.4th at pp. 1630–1631; *Fisher, supra,* 214 Cal.App.3d at p. 613.)

Plaintiff has had several informal and formal opportunities to amend in the face of defendant's repeated challenges to the sufficiency of her pleadings. Moreover, when the trial court sustained defendant's demurrer to the second amended complaint and granted plaintiff leave to amend, it expressly instructed her to "do so with specificity by stating the specific conduct that supports her claim of severe and pervasive 'stalking,' including precisely when it occurred, how often it occurred, and where each such act occurred." In light of plaintiff's inadequate response to the court's order, and the circumstance that plaintiff has offered no indication of an ability or willingness to cure the pleading deficiencies identified by the trial court, we see no reasonable possibility of amendments that could satisfy the pleading requirements. (See *Schulz v. Neovi Data Corp.* (2007) 152 Cal.App.4th 86, 97.) Accordingly, the trial court properly sustained the demurrer to this cause of action without leave to amend.

## B. Second Cause of Action:  Violation of FEHA (Retaliation for Asserting Rights Under FEHA)

FEHA makes it an unlawful employment practice for an employer to "discharge, expel, or otherwise discriminate against any person . . . because the person has filed a complaint" pursuant to FEHA. (§ 12940, subd. (h).)  To establish a prima facie case of retaliation under FEHA, the plaintiff "must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)  The

prohibition against retaliation extends to "the entire spectrum of employment actions," including "adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion." (*Id.* at pp. 1054–1055.) "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." (*Id.* at p. 1042.) "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." (*Ibid.*)

Plaintiff's second cause of action contains the following allegations. In September 2019, Associate Provost Linda Dobb "stated in substance and effect to Plaintiff that because she had asserted her rights under *FEHA* by bringing this lawsuit and was seeking redress of her unwaiveable [*sic*] Statutory Civil Rights for a *FEHA* violation, she must resign from or step down from an Academic Committee, the University Administrative Review Committee [the Committee]." Service on committees such as the Committee, "while not mandatory, [is] part of the Tenure and post Tenure performance review process and [is] important in the standing and advancement of Plaintiff's career and stature within the University Academic Community" and "enables Plaintiff to better perform her role as a Tenured member of the Faculty . . . ." Ms. Dobb's use of "mandatory language" in directing plaintiff to resign had "a coercive effect" and "would reasonably be received by fellow faculty as an attack on Plaintiff's integrity, ethics and impartiality, damaging Plaintiff's standing and reputation among her fellow members of the Academic Community." Following plaintiff's amendment of the complaint to allege the second cause of action, "Plaintiff received a written communication from Dr. Leroy Morishita, President of the University," stating that

14

" 'circumstances make it clear that you have a conflict of interest that might compromise the Committee's neutrality if you participate in its reviews . . .' " After "Plaintiff refused to resign from the Committee," her term "expired." Although plaintiff "is eligible for re-election" to the Committee, defendant's management have not responded to plaintiff's inquiries about re-election. "Other members of the Committee have not been treated in that fashion."

As the trial court found, this second cause of action sufficiently alleges that plaintiff engaged in protected activity (i.e., filing a discrimination charge with DFEH), but it fails to identify and allege a "substantial and material adverse effect on the terms and conditions of the plaintiff's employment" (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 387; see *Yanowitz*, *supra*, 36 Cal.4th at p. 1052.) Although plaintiff alleges the Academic Provost's use of mandatory language in directing her to resign had "a coercive effect," there is no allegation that plaintiff actually resigned or was otherwise removed from the Committee. To the contrary, plaintiff expressly alleges that she refused to resign and that she was eligible for re-election after her term on the committee expired. And while plaintiff conclusorily alleges that defendant was unresponsive to her re-election inquiries, she does not allege that defendant barred or interfered with any efforts she may have taken to seek re-election. Accordingly, even assuming Ms. Dobb and Dr. Morishita made the comments as alleged, plaintiff points to no authority holding that "a single threat of an adverse employment action, never carried out"—in and of itself—constitutes an actionable adverse action. (*Meeks v. AutoZone, Inc.* (2018) 24 Cal.App.5th 855, 879.)

Again, in light of plaintiff's inadequate response to the court's order and the lack of any indication that plaintiff can cure the pleading deficiencies identified by the trial court, we see no reasonable possibility of amendments

15

that could satisfy the pleading requirements. (*Schulz v. Neovi Data Corp.*, *supra,* 152 Cal.App.4th at p. 97.) Accordingly, the trial court properly sustained the demurrer to the second cause of action without leave to amend.

## DISPOSITION

The judgment of dismissal is affirmed. Defendant is entitled to its costs on appeal.

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Rodrìguez, J.




A162131